UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

IBRAHIM R. OLAYAN,                    )
        Plaintiff,              )
                                       )
    vs.                              )        1:11-cv-0003-SEB-DML
                                       )
ERIC H. HOLDER, Attorney General of the )
United States, *et al.*,                   )
           Defendants.              )

**ORDER ADDRESSING PENDING MOTIONS**

This cause is before the Court on Plaintiff's Motion to Strike Affirmative Defense
[Docket No. 20], filed on April 21, 2011; Defendants' Combined Motion for Summary
Judgment and Partial Motion to Dismiss [Docket No. 29], filed on May 27, 2011; and
Plaintiff's Cross-Motion for Summary Judgment [Docket No. 33], filed on July 6, 2011.
For the reasons detailed in this entry, Plaintiff's Motion to Strike Affirmative Defense is
DENIED; Defendants' Motion for Summary Judgment is GRANTED; Defendants'
Partial Motion to Dismiss is GRANTED; and Plaintiff's Cross-Motion for Summary
Judgment is DENIED.

**<u>Factual Background</u>**

Ibrahim Olayan is a native and citizen of Jordan.  On July 18, 1992, he entered the
United States via KLM Airlines, arriving at Detroit Metropolitan Airport's international
terminal.  First Am. Compl. Ex. 2 ("FBI Ltr.") ¶ 1.  Immigration enforcement officers

detained Mr. Olayan[1] during initial inspection because he was found to have used his brother's passport to effect admission to the United States. *Id.*; First Am. Compl. ¶ 4. After Mr. Olayan's initial processing, representatives from the Federal Bureau of Investigation (FBI) engaged him in a series of interviews during which Mr. Olayan supplied information "associated with a matter of current investigative interest to the FBI and other federal agencies." FBI Ltr. ¶ 2. Preliminary results of a polygraph examination from one session "indicated that [Mr. Olayan] was not deceptive in his responses," and follow-up research led the FBI to conclude that his information was credible. *Id.*

Mr. Olayan filed a Request for Asylum in the United States ("Form I-589") in December of 1992. Defs.' Br. for S.J. Ex. 1 at 1. On October 21, 1993, he and certain FBI representatives presented *in camera* testimony before an immigration judge (IJ). The FBI presented evidence of Mr. Olayan's interviews and the violent crimes about which he had provided information. It was the FBI's position at this hearing that, should Mr. Olayan return to Jordan, it would "place[] his life in severe jeopardy." First Am. Compl. ¶ 5. Thus, based on the available evidence, the IJ issued a Memorandum of Oral Decision. Pl.'s Mot. to Strike Ex. A. The IJ indicated by check mark on the memorandum form that "[t]he application for Asylum/<u>withholding of Deportation</u> under Section 208(a) of the Act was granted/<u>denied/withdrawn</u>." *Id.* (emphasis supplied by IJ).[2]

---

[1]The FBI has referred to Plaintiff not as Ibrahim Olayan, but as Ibrahim Ahmad. *See generally* FBI Ltr. For our purposes, we will address the plaintiff as Mr. Olayan.

[2]Mr. Olayan characterizes the result of this decision as follows: "the immigration judge
(continued...)

Further, the IJ noted that, barring any appeal by Mr. Olayan, the decision was final.

Following these proceedings, Mr. Olayan embarked on a quest for United States citizenship. He sent his Application to Register Permanent Residence or Adjust Status ("Form I-485"), having signed it under penalty of perjury, to the former Immigration and Naturalization Service (INS)[3] on October 31, 1994,[4] and INS officially filed his Form I-485 on November 8, 1994. First Am. Compl. ¶ 7; Defs.' Br. for S.J. Ex. 1 at 1. On Part C of Form I-485, Mr. Olayan did not indicate military service or any past or present membership or affiliation with organizations. He also marked "no" in answer to the following question:

> Have you ever engaged in, conspired to engage in, or do you intend to engage in, or have you ever solicited membership or funds for, or have you through any means ever assisted or provided any type of material support to any person or organization that has ever engaged or conspired to engage, in sabotage, kidnapping, political assassination, hijacking, or any other form of terrorist activity?

Defs.' Br. for S.J. Ex. 1 at 1-2. The INS approved his Form I-485 and adjusted his status to that of permanent resident. Sometime in 2000, Mr. Olayan received his permanent

---

[2](...continued)
granted Plaintiff asylum." First Am. Compl. ¶ 5. The defendants admit this allegation. Answer ¶ 5. Although we find the wording used in the IJ's decision confusing, we need not address this issue further because, in response to Plaintiff's allegation of asylum, Defendants have conceded that "[t]he question of asylum is not at issue in this action." Defs.' Br. for S.J. at 2.

[3]In 2003, the INS was abolished, and its responsibilities merged into the new Department of Homeland Security. United States Citizenship and Immigration Services (USCIS) now administers immigration and naturalization services. Defs.' Br. for S.J. Ex. 1 at 1.

[4]An alien asylee may petition USCIS to have his status adjusted "to that of an alien lawfully admitted for permanent residence." 8 C.F.R. § 209.2(a)(1).

resident card, which reflects that he has been a United States resident since October 1, 1998.  First Am. Compl. ¶ 8; First Am. Compl. Ex. 3.

In June of 2003, Mr. Olayan filed an Application for Naturalization (the "N-400") with United States Citizenship and Immigration Services (USCIS).  The agency received his N-400 on June 12, 2003.  First Am. Compl. ¶ 9.  On July 30, 2008, Mr. Olayan filed a mandamus action in this court seeking an order to compel Defendants to schedule a citizenship interview.  After the Court denied Defendants' First Motion to Dismiss, Defendants interviewed Mr. Olayan under oath on April 23, 2009.  *Id.* ¶¶ 10-12.  Mr. Olayan admitted at this meeting, *inter alia*, that he was a member of the Islamic Mujahidin group in Jordan.  Moreover, he served the group as a courier of letters between Jordan and Syria, and he had intended to join the group's 1990 plan to bomb the U.S. Embassy in Jordan.  Defs.' Br. for S.J. at 3-4; Pl.'s Br. for S.J. at 4.  USCIS denied his eligibility for naturalization on June 18, 2009, citing the following reasons:

> [Y]ou failed to show that you had the required continuous residence to be eligible for Naturalization under section 316 of the Act; you . . . failed to show that you are a person of good moral character; and you . . . failed to demonstrate that you were lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of this Act . . . .

Defs.' Br. for S.J. Ex. 1 at 2.

Mr. Olayan timely filed a Form N-336 request for a rehearing of his Application for Naturalization on July 13, 2009.  First Am. Compl. Ex. 1 at 2.  In support of his request, Mr. Olayan submitted a statement from his attorney, which explained that he had misunderstood the term "arrested" and other N-400 questions and also emphasized his

cooperation with the FBI and compliance with the Refugee Act of 1980.  *Id.*  He appeared

before a USCIS official on November 6, 2009 for a *de novo* hearing.  He subsequently

"decided to file this current proceedings to compel Defendants to make a decision on

Plaintiff's hearing"[5] on January 3, 2011.  First Am. Compl. ¶ 15.  On March 3, 2011,

Defendants issued a decision reaffirming the denial of Mr. Olayan's Application for

Naturalization.  *Id.* ¶ 16.

Mr. Olayan filed his First Amended Complaint with this court on May 19, 2011.

As his first cause of action, he seeks *de novo* review of Defendants' denial of his

Application for Naturalization, pursuant to 8 U.S.C. § 1421(c).  He also alleges that he

has been a permanent resident of the United States since 1998.  Finally, in two related

causes of action, Mr. Olayan claims that Defendants' denial of his Application for

Naturalization contravenes 8 U.S.C. § 1422 and the Equal Protection Clause of the

Fourteenth Amendment to the Constitution.

## Legal Analysis

"A person whose application for naturalization . . . is denied, after a hearing before

an immigration officer under [8 U.S.C. § 1447(a)], may seek review of such denial before

---

[5]Mr. Olayan contends that, following his administrative review hearing, "a decision was
to be rendered within a reasonable time not to exceed 120 days."  First Am. Compl. ¶ 14.  In his
view, 8 U.S.C. § 1447(b) supports this allegation.  We note that 8 U.S.C. § 1447(b) permits an
applicant for naturalization to petition the district court for a hearing "[i]f there is a failure to
make a determination under [8 U.S.C. § 1446] before the end of the 120-day period."  Section
1446 pertains to the initial naturalization interview and does not specifically address post-denial
rehearings before USCIS.  Although we recognize Mr. Olayan's frustration in having to wait
more than a year for a decision on administrative review, we do not find USCIS's conduct so
untimely as to be worthy of censure.

the United States district court for the district in which such person resides." 8 U.S.C. § 1421(c). Our review of this denial is *de novo*; the Court is required to make its own findings of fact and conclusions of law. *Id.*; *see also O'Sullivan v. U.S. Citizenship & Immigration Servs.*, 453 F.3d 809, 812 (7th Cir. 2006) (noting that "Congress specifically calls for *de novo* review in naturalization cases, while ordering great deference in other immigration contexts").

## I. Motion to Strike Affirmative Defense

## A. Standard of Review

Acting *sua sponte* or upon a party's motion, a court may strike from a pleading any "insufficient" defense asserted "or any redundant, immaterial, impertinent, or scandalous[6] matter." Fed. R. Civ. P. 12(f). Motions asserted under Rule 12(f) are "ordinarily not granted unless the language in the pleading at issue has no possible relation to the controversy and is clearly prejudicial." *Hofmann v. Aspen Dental Mgmt., Inc.*, No. 3:10-cv-37-SEB-WGH, 2011 WL 3902773, at *3 (S.D. Ind. Sept. 6, 2011) (quoting *Baker v. Westinghouse Elec. Corp.*, 830 F. Supp. 1161, 1168 (S.D. Ind. 1993)). The Seventh Circuit has gone so far as to say that motions to strike "will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of facts which could be proved in support of the defense." *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991). Affirmative defenses are usually stricken "only when they are

---

[6]Allegations are deemed "scandalous" when they are prejudicial or bear no relation to the controversy. *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992).

insufficient on the face of the pleadings." *Id.* (quoting *Heller Fin. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989)). Ultimately, the decision to strike material is within the discretion of the district court. *See Talbot*, 961 F.2d at 665.

## B. Discussion

Mr. Olayan has moved to strike the fourth paragraph of Defendants' Answer ("Paragraph 4") and Defendants' fifth affirmative defense. Paragraph 4 states as follows:

> Defendants admit that plaintiff is a native and citizen of Jordan. Defendants further admit that plaintiff was granted permanent legal residence status[,] but this grant was not in compliance with law. Defendants deny that plaintiff was lawfully granted permanent residence status and deny the remaining allegations in paragraph 4 [of Plaintiff's Complaint].

Answer ¶ 4. The fifth affirmative defense is that "Plaintiff's claims are barred because plaintiff was never lawfully granted legal permanent resident status." *Id.* at 5. Mr. Olayan alleges that both Paragraph 4 of the Government's Answer and this defense are legally insufficient, would lead to burdensome discovery, and have no bearing on whether Defendants lawfully denied his Application for Naturalization. Pl.'s Mot. to Strike at 2. Nevertheless, because Mr. Olayan only offers bare assertions in support of this point, we decline to address it in any detail. Given the relatively high standard for striking portions of the pleadings, we cannot conclude, as Mr. Olayan does, that Defendants' answer and defense are "no more than a sham" if he fails to develop this argument.

Mr. Olayan also argues that the doctrine of *res judicata* bars Defendants from taking the position that he was never lawfully granted the status of permanent resident. Pl.'s Mot. to Strike at 3-4. Specifically, he asserts that the IJ's decision granting him

asylum is immune from collateral attack. Yet he also rationalizes this argument as follows: "Plaintiff applied for an adjustment of status that was granted by Defendants[,] and Plaintiff has been a permanent resident of the United States since 1998. This immigration judge's decision is *res judicata*." *Id.* at 3. Mr. Olayan's logical leap in reaching this conclusion significantly undermines his case.

It is clear to the Court that Mr. Olayan's status hinges on more than the IJ's October 1993 decision. The Immigration and Nationality Act plainly states that "[a]sylum . . . does not convey a right to remain permanently in the United States." 8 U.S.C. § 1158(c)(2). After the IJ granted him asylum, Mr. Olayan still had to apply for status adjustment by completing and filing Form I-485 with the agency now operating as USCIS, and in so doing, he indicated on Form I-485 that he had never conspired to engage in terrorist activity, signing the form under penalty of perjury, thereby certifying that all information provided therein was true and correct. Comparing this information to assertions made in briefs before the Court, it becomes obvious that Mr. Olayan supplied false information on Form I-485. Mr. Olayan all but acknowledges this falsehood because he does not dispute that he "used to belong to the Mujahidin group . . . [which] planned to bomb the U.S. Embassy in Jordan." Pl.'s Mot. for S.J. at 4. This behavior falls within the category of "terrorist activity," as defined in the Immigration and Nationality Act:

> any activity which is unlawful under the laws of the place where it is committed
> (or which, if it had been committed in the United States, would be unlawful under
> the laws of the United States or any State) and which involves any of the

following:

> [t]he use of any–
>> explosive, firearm, or other weapon or dangerous device (other than for mere personal monetary gain), with intent to endanger, directly or indirectly, the safety of one or more individuals or to cause substantial damage to property.

8 U.S.C. § 1182(a)(3)(B)(ii)(V)(b); *see also id.* § 1182(a)(3)(B)(iv)(II) (noting that terrorist activity also contemplates preparing or planning such activities).

Pursuant to the Immigration and Nationality Act, "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure . . . a visa, other documentation, or admission into the United States . . . is inadmissible." 8 U.S.C. § 1182(a)(6)(C)(I). A "material fact" is one that is potentially outcome-determinative. *Jenkins v. Heitz*, 124 F.3d 824, 828 (7th Cir. 1997); *Williams v. United Techs. Carrier Corp.*, 310 F. Supp. 2d 1002, 1007 (S.D. Ind. 2004). In the instant litigation, Mr. Olayan's misrepresentation on Form I-485 was material because it attempted to mask his membership in a Tier III organization—that is, "an undesignated group of two or more individuals" that engages in terrorist activity as defined in 8 U.S.C. § 1182(a)(3)(B). *Alghadbawi v. Napolitano*, No. 1:10-cv-1130-TWP-DKL, 2011 WL 4390084, at *2 (S.D. Ind. Sept. 19, 2011). "Participants in Tier III organizations, absent an exemption, are inadmissible to the United States, and as a result, may not adjust their status [to become permanent residents]." *Id.*

In light of the foregoing, we see no reason to deprive Defendants of the argument that Mr. Olayan was not lawfully admitted to the United States. We are mindful of the

Department of Justice's position that 8 U.S.C. § 1182(a)(6)(C)(I) applies both retrospectively and prospectively. *In re L– L–*, No. A-11666111, 9 I. & N. Dec. 324, 325 (Bd. Immigration Appeals 1961); *In re M–*, No. A-2237374, 6 I. & N. Dec. 149, 149 (Bd. Immigration Appeals 1954). The propriety of Mr. Olayan's status adjustment, which he procured by misrepresenting material facts on Form I-485, bears directly on whether he is lawfully entitled to be in this country. Therefore, because it does not appear certain that Mr. Olayan would succeed despite any state of facts which could be proved in support of the defense, we DENY his Motion to Strike.

## II. Motions for Summary Judgment

### A. Standard of Review

Summary judgment is appropriate when the record demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in the light most favorable to the non-moving party and draws all reasonable inferences in favor of the same. *See id.* at 255. However, neither the "mere existence of some alleged factual dispute between the parties," *id.* at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), will defeat a motion for

summary judgment. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

Initially, the moving party is responsible for "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. *Id.* at 325.

Summary judgment is neither a substitute for a trial on the merits nor a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-moving party, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that the moving party will be unable to satisfy the legal requirements necessary to establish his case, summary judgment is not merely appropriate, but mandated. *See Celotex*, 477 U.S. at 322; *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003). Moreover, a party's failure to prove one essential element "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. A plaintiff's statements which are self-serving, speculative, or not founded upon personal knowledge, and which are unsupported by specific concrete facts reflected in the

record, cannot preclude summary judgment.  *Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999); *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir. 1993).

Courts frequently encounter cross-motions for summary judgment because Rules 56(a) and (b) of the Federal Rules of Civil Procedure allow plaintiffs and defendants alike to move for this relief.  "In such situations, courts must consider each party's motion individually to determine if that party has satisfied the summary judgment standard." *Hofmann*, 2011 WL 3902773, at *9 (quoting *Kohl v. Ass'n of Trial Lawyers of Am.*, 183 F.R.D. 475, 478 (D. Md. 1998)).  Thus, in determining whether genuine and material factual disputes exist in this case, the Court has considered the parties' respective memoranda and exhibits attached thereto, construing all facts and drawing all reasonable inferences therefrom in the light most favorable to the respective non-movant.  *Id.*

## B.  Discussion

### 1.  Defendants' Motion for Summary Judgment

Defendants argue that summary judgment against Mr. Olayan is proper with respect to his claim under 8 U.S.C. § 1421(c), the section of the Immigration and Nationality Act that provides judicial review for the denial of his Application for Naturalization.  Specifically, Defendants contend that no genuine issue of material fact exists relating to Mr. Olayan's citizenship eligibility because his previous terrorist activity rendered him inadmissible as a matter of law when he adjusted his status to permanent resident.

To qualify for naturalization, an individual must first demonstrate that he has:

-resided continuously in the United States for at least five years immediately prior to applying for naturalization "after being lawfully admitted for permanent residence" (plus certain specific residency requirements not pertinent here);
-resided continuously within the United States from the date of the application up to the time of admission to citizenship; and
-during all of these periods "has been and still is a person of good moral character, attached to the principles of the Constitution of the United States."

*Babatunde v. Napolitano*, No. 09-C-2600, 2011 WL 332523, at *6 (N.D. Ill. Jan. 31, 2011) (quoting 8 U.S.C. § 1427(a)(1)-(3)); *see also* 8 C.F.R. § 316.2.  The Immigration and Nationality Act underscores the importance of being a permanent resident in other provisions of the statute as follows:  "no person shall be naturalized unless he has been *lawfully admitted to the United States for permanent residence* in accordance with all applicable provisions of this chapter.  The burden of proof shall be upon such person to show that he entered the United States lawfully . . . ."  8 U.S.C. § 1429 (emphasis added). Further, the hopeful citizen bears the burden of proving his eligibility under this statute in every respect.  *I.N.S. v. Pangilinan*, 486 U.S. 875, 886 (1988).  He must prove his eligibility by a preponderance of the evidence,[7] and any doubts must be resolved in favor of the United States.  *Plewa v. I.N.S.*, 77 F. Supp. 2d 905, 908-09 (N.D. Ill. 1999) (citing *Berenyi v. I.N.S.*, 385 U.S. 630, 637 (1967)).

In its March 3, 2011 denial of Mr. Olayan's Application for Naturalization, USCIS concluded that Mr. Olayan had failed to satisfy all statutory prerequisites for

---

[7]At least one circuit has held that the applicant must establish such eligibility by clear and convincing evidence.  *Dicicco v. I.N.S.*, 873 F.2d 910, 915 (6th Cir. 1989).

naturalization.  Specifically, USCIS informed him that "[s]ince your permanent resident status was not obtained lawfully, you fail to satisfy the prerequisite . . . that you have been lawfully admitted to the United States for permanent residence."  First Am. Compl. Ex. 1 at 5.  Mr. Olayan has denied that he obtained such status unlawfully and presently argues that he has satisfied all statutory requirements to apply for naturalization as of October 1, 2002.  Pl.'s Br. for S.J. at 10.  Accordingly, we review his application *de novo* and make our own findings of fact and conclusions regarding whether he did, in fact, satisfy the requirements of the Immigration and Nationality Act.

We first note that "[t]he term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws."  8 U.S.C. § 1101(a)(20).  The laws with which the applicant must conform are "the immigration laws in effect *at the time of [his] initial entry*."  8 C.F.R. § 316.2(b) (emphasis added).  Mr. Olayan entered the country in 1992, when the following immigration laws were in effect:

(1)  Terrorist activity was defined as "[a] violent attack upon an internationally protected person," 8 U.S.C. § 1182(a)(3)(B)(ii)(III) (1992);

(2) Terrorist activity included "[t]he use of any . . . explosive . . . with intent to endanger, directly or indirectly, the safety of one or more individuals," *id.* § 1182(a)(3)(B)(ii)(V)(b) (1992); and

(3) Terrorist activity encompassed preparing for terrorist activity, gathering information on potential targets, and providing "material support," such as

14

communications or transportation, to others who plan to commit terrorist activity, *id.* § 1182(a)(3)(B)(iii)(I)-(III) (1992).

There is relatively little disagreement between the parties regarding the facts of this case relating to these immigration laws. As noted above, Mr. Olayan denies neither that he once belonged the Mujahidin group nor that in 1990 this group was preparing to attack the U.S. Embassy in Amman, Jordan by detonating a bomb. He further does not dispute that his role in this bombing scheme was that of a letter courier between group members in Syria and Jordan. *See* Pl.'s Br. for S.J. at 4. Applying these facts to the above statutory provisions makes clear that, as of 1992, Mr. Olayan had engaged in multiple forms of terrorist activity. We "assume that the legislative purpose is expressed by the ordinary meaning of the words used" in the statute. *Oyebade v. Lee*, No. 1:09-cv-1054-LJM-TAB, 2010 WL 2927207, at *5 (S.D. Ind. July 21, 2010) (quoting *I.N.S. v. Phinpathya*, 464 U.S. 183, 189 (1984)). Thus, because the 1992 version of the Immigration and Nationality Act provides that any alien who has engaged in terrorist activity is excludable from the United States, 8 U.S.C. § 1182(a)(3)(B)(i)(I) (1992), we conclude that Congress's intent was to permit USCIS to deny citizenship to individuals with histories of involvements like Mr. Olayan's.

We do not dispute Mr. Olayan's argument that, despite using his brother's passport to effect illegal entry into the United States, he was nevertheless properly granted asylum. Rather, we find as a matter of law that Mr. Olayan was inadmissible into this country when he adjusted his status because of his engagement in terrorist activity. Violating

even one of the above-mentioned provisions of the Immigration and Nationality Act precludes lawful admission to the United States; here, both parties have agreed that Mr. Olayan violated as many as three statutory sections. No further factfinding is required by the Court to support our conclusion that, in light of these egregious actions, Mr. Olayan's status should not have been adjusted in the 1990s to make him a permanent resident.

Furthermore, Mr. Olayan was required to have good moral character in order to be lawfully naturalized. 8 U.S.C. § 1427(a)(3). USCIS evaluates applicants' moral character "on a case-by-case basis[,] taking into account . . . the standards of the average citizen in the community of residence." 8 C.F.R. § 316.10(a)(2). The evaluation may include any conduct or acts by an applicant "at any time" and is not limited to the five years immediately preceding the filing of the Application for Naturalization. *Id.* In addition to findings USCIS may make, certain acts render an applicant *per se* lacking in "good moral character." Namely, an applicant is deficient in good moral character if he is found to have "[c]ommitted unlawful acts that adversely reflect upon [his] moral character . . . although the acts do not fall within the purview of § 316.10(b) (1) or (2)." *Id.* § 316.10(b)(3)(iii). We believe Mr. Olayan's misrepresentations to USCIS—namely, his false statements on Form I-485—contravene standards requiring "good moral character." Thus, without necessity of considering Defendants' argument that his handgun possession arrest also violates character requirements for naturalization, we find that Mr. Olayan lacked the requisite character traits to entitle him to U.S. citizenship.

Notwithstanding these procedural shortcomings, Mr. Olayan appears to argue that

16

his permanent resident status is valid simply because it has previously been conferred upon him. However, the Board of Immigration Appeals has held that "lawfully admitted for permanent residence" does not apply to aliens who "obtained their permanent resident status by fraud, *or had otherwise not been entitled to it*." *In re Koloamantangi*, 23 I. & N. Dec. 548, 550 (Bd. Immigration Appeals 2003) (emphasis added). The Seventh Circuit has expressly recognized that misrepresentation is an important basis upon which the agency may conclude that an alien did not lawfully adjust his status to permanent resident. *See Estrada-Ramos v. Holder*, 611 F.3d 318, 321 (7th Cir. 2010). In *Estrada-Ramos*, the Seventh Circuit held that "to be 'lawfully admitted[,]' the adjustment of status must be in compliance with substantive legal requirements, not mere procedural regularity." *Id.* (citing *Savoury v. U.S. Att'y Gen.*, 449 F.3d 1307, 1316 (11th Cir. 2006)). We agree with—and are bound by—Seventh Circuit precedent on this matter, and we therefore accept Defendants' assertion that Mr. Olayan was never "lawfully admitted" for permanent residence.

We also note that it is entirely proper for this court to insist on strict compliance with statutory standards in reviewing petitions for naturalization. Article 1, Section 8 of the Constitution vests in Congress the power to prescribe standards for immigration. "[J]udicial insistence on strict compliance with the statutory conditions . . . is simply an acknowledgment of the fact that Congress alone has the constitutional authority to prescribe rules for naturalization, and the courts' task is to assure compliance with the particular prerequisites." *United States v. Tittjung*, 235 F.3d 330, 338 (7th Cir. 2000)

(quoting *Fedorenko v. United States*, 449 U.S. 490, 506 (1981)).

Lastly, Mr. Olayan's apparent estoppel argument must also fail. Although federal courts "sit as courts of equity" in reviewing petitions for naturalization, they "can no more disregard statutory and constitutional requirements and provisions than can courts of law." *Pangilinan*, 486 U.S. at 883. Nor can a district court invoke principles such as collateral estoppel to confer citizenship when doing so would contravene "public policy established by Congress." *Id.*; *see also Iddir v. I.N.S.*, 301 F.3d 492, 500 (7th Cir. 2002) ("The power to confer citizenship upon aliens rests solely with Congress, as delegated to the Executive branch to administer.").

Based on the facts presented in the record before us and our understanding of the laws of the United States, we now find as a matter of fact that Mr. Olayan committed terrorist activity prior to his initial entry into this country. Thus, in his prior submissions to INS, he lied about his involvement in these activities and thereby wrongfully obtained an adjustment of his immigration status from asylee to permanent resident. Accordingly, we conclude that Mr. Olayan did not lawfully obtain permanent resident status. His failure to become a permanent resident in accordance with the immigration laws in effect when he entered the United States leads us to a single conclusion: he is unable to satisfy all the statutory prerequisites for naturalization under the Immigration and Nationality Act.[8] Thus, we shall not disturb USCIS's March 3, 2011 decision to deny Mr. Olayan's

---

[8]Again, because the Act requires compliance with *all* prerequisites for naturalization, and

(continued...)

Application for Naturalization and, finding no genuine issue of material fact as to the validity of USCIS's decision, we now GRANT Defendants' Motion for Summary Judgment.

### 2. Plaintiff's Cross-Motion for Summary Judgment

In his own separate cross-motion for summary judgment, Mr. Olayan asks the Court to decide three issues in his favor, namely: (1) that he was lawfully granted permanent resident status; (2) that he is eligible for naturalization; and (3) that if Defendants terminate his asylum status, it will be arbitrary and capricious and will, therefore, violate the Administrative Procedures Act, 5 U.S.C. § 706(2)(A). As we have already concluded that Mr. Olayan was *not* lawfully granted permanent resident status and that he is not eligible for naturalization, we address only the final issue he raises.

Mr. Olayan's remaining argument is that he "cannot be subject to termination of his asylum status . . . [because] [d]oing so will violate [his] right to due process and [will be] arbitrary and capricious." Pl.'s Br. for S.J. at 12. He alleges that Defendants "*may* determine whether an enumerated basis for termination of asylum exists," but that such termination is not automatic. *Id.* at 10. Next, he provides a laundry list of reasons why he believes he does not qualify for a mandatory denial of asylum under 8 C.F.R. § 208.13(c)(2). *Id.* at 11. Conspicuously absent from any of his contentions, though, is any

---

[8](...continued)
because we have determined that Mr. Olayan was not lawfully granted permanent resident status, we need not analyze whether he established continuous residence under 8 U.S.C. § 1427.

evidence establishing that Defendants have threatened Mr. Olayan with revocation of his asylee status or any argument why such revocation would violate the Administrative Procedures Act.

More importantly, even if Defendants were now deeming Mr. Olayan ineligible for asylum status, we would not overrule their interpretation. We owe USCIS *Chevron* deference in its interpretation of the Immigration and Nationality Act. *Gattem v. Gonzales*, 412 F.3d 758, 763 (7th Cir. 2005) (citing *I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999)). As a practical matter, this means that, insofar as Defendants' interpretation of Mr. Olayan's status turns on interpreting the statute it is entitled to administer, "we must defer to that construction so long as it is 'consistent with the language and purposes of the statute.'" *Id.* (quoting *Aguirre-Aguirre*, 526 U.S. at 426). *Chevron* deference is especially appropriate in the context of naturalization because it involves the exercise of "especially sensitive political functions that implicate questions of foreign relations." *Ali v. Achim*, 468 F.3d 462, 468 (7th Cir. 2006).

We are presently unaware of Defendants' stance on whether Mr. Olayan ought to remain an asylee under the Immigration and Nationality Act. As a result, we must conclude that there remain issues of material fact regarding whether Defendants have interpreted this statute at all, let alone whether they have interpreted it in a reasonable matter. We therefore DENY Plaintiff's Cross-Motion for Summary Judgment.

## III.  Motion to Dismiss

## A.  Standard of Review

Defendants have moved to dismiss Counts II, III, and IV of Mr. Olayan's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) directs dismissal if the plaintiff's complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In its assessment of a Rule 12(b)(6) motion, the court accepts all well-pleaded allegations from the complaint as true and makes any reasonable inferences in the plaintiff's favor. *See Moranski v. Gen. Motors Corp.*, 433 F.3d 537, 539 (7th Cir. 2005). Courts follow the fairly liberal "notice pleading" standard in evaluating complaints under this rule, requiring only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). At this stage, "the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). Thus, dismissal is only proper when a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court may consider exhibits attached to the complaint as part of the pleadings. *Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir. 1998).

**B. Discussion**

In Count II, Mr. Olayan does little more than review the path one must take to proceed from "refugee" to "asylee" and, eventually, "permanent resident." He then briefly describes his personal experience and asserts that he "has been a permanent resident of the United States since 1998" and that such status was "based on his asylum application." First Am. Compl. ¶¶ 24, 23. However, the limited text he provides does not

point toward an actionable claim in an immigration case.

It is well-settled in the Seventh Circuit that a plaintiff's burden in a complaint entails "more than labels and conclusions, and a formulaic recitation . . . will not do." *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). Moreover, "at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Id.* at 619 (quoting *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007)). We agree with Defendants' assertion that, rather than presenting a cognizable claim for relief in Count II, Mr. Olayan has merely advanced a legal argument in support of his first cause of action. Consequently, dismissal pursuant to Rule 12(b)(6) is the proper outcome for such an inadequately pled "cause of action."

In Count III, Mr. Olayan alleges that he has been unfairly singled out and denied citizenship in violation of 8 U.S.C. § 1422. This section of the Immigration and Nationality Act provides as follows: "The right of a person to become a naturalized citizen of the United States shall not be denied or abridged because of race or sex or because such person is married." 8 U.S.C. § 1422. Defendants contend that because 8 U.S.C. § 1422 "does not create an independent cause of action . . . apart from 8 U.S.C. § 1421(c)," this is not a cause of action that may be brought in federal court.

When the basis of a lawsuit is a federal statute, a federal cause of action must also exist for a federal court to hear a particular claim. *Int'l Union of Operating Eng'rs v. Ward*, 563 F.3d 276, 281 (7th Cir. 2009). The threshold question for the district court is

whether the statute creates a private right of action; if it does not, the court need not entertain the claim invoking the statute. *See Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 456 (1974). We therefore address whether 8 U.S.C. § 1422 creates a private federal cause of action for an applicant like Mr. Olayan. Federal causes of action may be created expressly or by implication, but "it is Congress, not this or any other court, that creates private causes of action to enforce federal law." *Ward*, 563 F.3d at 282. A district court may not create a private cause of action, "no matter how desirable that might be as a policy matter, or how compatible with the statute." *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001).

For the specific statute Mr. Olayan cites, 8 U.S.C. § 1422, Congress has neither expressly nor implicitly created a federal cause of action. "An express federal cause of action states, in so many words, that the law permits a claimant to bring a claim in federal court." *Ward*, 563 F.3d at 283. A plain reading of 8 U.S.C. § 1422 reveals that this section contains no language pertaining to litigation. Thus, we next ask whether the statute creates an implied federal cause of action. We need not undertake the analysis generally employed for this question because, in the typical case of this sort, the statute in question makes some reference to filing a lawsuit. *See, e.g.*, *id.* at 280 (finding implied cause of action where statute provided that "such member may sue such officer . . . in any district court of the United States . . . ."). *But see Operative Plasterers & Cement Mixers Int'l Ass'n v. Benjamin*, 776 F. Supp. 1360, 1364 (N.D. Ind. 1981) (for same statute, no implied cause of action despite "may sue" language). The statutory language in the case

before us creates no question as to whether the drafters somehow indirectly intended to allow private persons to sue under the statute. As a result, we dismiss this claim under Rule 12(b)(6) as well.

Finally, in Count IV, Mr. Olayan asserts that Defendants' denial of his Application for Naturalization violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution. Defendants contend that the Constitution provides no independent cause of action for Mr. Olayan's situation. Once again, we agree with Defendants and thus conclude that this "cause of action" is not cognizable in federal court.

"[I]t is not 'political hypocrisy' to recognize that the Fourteenth Amendment's limits on state powers are substantially different from the constitutional provisions applicable to the federal power over immigration and naturalization." *Mathews v. Diaz*, 426 U.S. 67, 86-87 (1976). The Fourteenth Amendment does call for equal treatment of naturalized and native citizens, but "this standard applies only to acts committed after citizenship." *United States v. Kairys*, 782 F.2d 1374, 1383 (7th Cir. 1986). Here, it is undisputed that Mr. Olayan has not been granted citizenship status. Perhaps more importantly for our purposes, though, is the Supreme Court's view that equal protection analysis in the naturalization context "involves significantly different considerations because it concerns the relationship between aliens and the States rather than aliens and the Federal Government." *Certain Named & Unnamed Non-Citizen Children v. Texas*, 448 U.S. 1327, 1331-32 (1980) (citation omitted). The Court has also held that regulating conditions on aliens' residence is the business of the executive branch of the federal

government, not of the states or the federal judiciary. *Mathews*, 426 U.S. at 84. We believe that in light of such established precedent, no equal protection analysis is appropriately applied here. Seeing no statutory classification of Mr. Olayan on the part of Defendants, and certainly no invasion of a fundamental constitutional right or disparate treatment of a suspect class, *see Gillespie v. City of Indianapolis*, 13 F. Supp. 2d 811, 822 (S.D. Ind. 1998), we also dismiss this claim pursuant to Rule 12(b)(6).

## Conclusion

For the reasons discussed above in this entry, we DENY Plaintiff's Motion to Strike; GRANT Defendants' Motion for Summary Judgment; DENY Plaintiff's Cross-Motion for Summary Judgment; and GRANT Defendants' Motion to Dismiss.

IT IS SO ORDERED.

Date: _____12/15/2011_____

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

• Christopher Westley Dempsey
U.S. DEPARTMENT OF JUSTICE
christopher.dempsey@usdoj.gov,christopher.w.dempsey@gmail.com

• Aaron Steven Goldsmith
DEPARTMENT OF JUSTICE
aaron.goldsmith@usdoj.gov,elizabeth.stevens@usdoj.gov

• Claire M. Ty
ABBOTT HARRIS & PERELLI
claire_muy@hotmail.com